AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT
### for the
### MIDDLE DISTRICT OF FLORIDA

RAYMOND MALARA, III
_____
*Petitioner*

v.

COLLETTE S. PETERS, DIRECTOR,
FEDERAL BUREAU OF PRISONS, Et Al,
_____
*Respondent*
*(name of warden or authorized person having custody of petitioner)*

Case No. _____
*(Supplied by Clerk of Court)*

5:25-cv-22-JSS-PRL

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1. **(a) Your full name:** Raymond Malara, III
   **(b) Other names you have used:** none
2. Place of confinement:
   **(a) Name of institution:** FCC Coleman CAmp
   **(b) Address:** P.O. Box 1031, Coleman, FL 33521-1031

   **(c) Your identification number:** 26697-509
3. Are you currently being held on orders by:
   ☒ Federal authorities    ☐ State authorities    ☐ Other - explain:

4. Are you currently:

   ☐ A pretrial detainee (waiting for trial on criminal charges)
   ☒ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
   If you are currently serving a sentence, provide:
   **(a) Name and location of court that sentenced you:** U.S. District Court for the Middle District of Florida, Tampa, FL.
   **(b) Docket number of criminal case:** 8:21-cr-66-KKM-AAS
   **(c) Date of sentencing:** March 3, 2022
   ☐ Being held on an immigration charge
   ☐ Other *(explain):*
   n/a

### Decision or Action You Are Challenging

5. What are you challenging in this petition:
   ☒ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

MALARA, RAYMOND 26697509

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

❏ Pretrial detention

❏ Immigration detention

❏ Detainer

❏ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

❏ Disciplinary proceedings

❏ Other (explain):   n/a

6.   Provide more information about the decision or action you are challenging:

(a) Name and location of the agency or court: Bureau of Prisons located at P.O. Box 1031, Coleman, FL 33521-1031

(b) Docket number, case number, or opinion number:  COP-OUT (See Exh.C)

(c) Decision or action you are challenging (for disciplinary proceedings, specify the penalties imposed): The denial of the agency to calcualte First Step Act of 2018 correctly and transfer me to home confinement or halfway house.

(d) Date of the decision or action:  December 20, 2024

### Your Earlier Challenges of the Decision or Action

7.   **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?

☑ Yes          ❏ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court: BOP in the form of a COP-OUT to my case manager.

(2) Date of filing:  December 18, 2024

(3) Docket number, case number, or opinion number:  See Exh.C at 2-3.

(4) Result: Told nothing could be done

(5) Date of result:  December 20, 2024

(6) Issues raised:  Same issue as question #6 above.

(b) If you answered "No," explain why you did not appeal:

8.   **Second appeal**

After the first appeal, did you file a second appeal to a higher authority, agency, or court?

☑ Yes          ❏ No

MALARA, RAYMOND 26697509

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:  BOP located at P.O. Box 1031
Coleman Camp, Coleman, FL 33521-1031

(2) Date of filing:  December 19, 2024

(3) Docket number, case number, or opinion number:  See Exh.C at 2.

(4) Result:  Told there was nothing that could be done

(5) Date of result:  December 20, 2024

(6) Issues raised:  Same issue at question #6

(b) If you answered "No," explain why you did not file a second appeal:

9. **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☐ Yes        ☐ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:  BOP located at P.O. Box 1031
Coleman Camp, Coleman, FL 33521-1031

(2) Date of filing:  January 1, 2025

(3) Docket number, case number, or opinion number:  See Exh.C at 1.

(4) Result:  no reply

(5) Date of result:

(6) Issues raised:  Same issue as question #6.

(b) If you answered "No," explain why you did not file a third appeal:
N/A

10. **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes        ☑ No

If "Yes," answer the following:

(a)  Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

☐ Yes        ☐ No

MALARA, RAYMOND 26697509

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

(b) Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes          ☑ No

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

(c) Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence: _____

_____

_____

_____

_____

11. **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes          ☑ No

If "Yes," provide:

(a) Date you were taken into immigration custody: _____

(b) Date of the removal or reinstatement order: _____

(c) Did you file an appeal with the Board of Immigration Appeals?

☐ Yes          ☐ No

MALARA, RAYMOND  26697509

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:

(1) Date of filing:

(2) Case number:

(3) Result:

(4) Date of result:

(5) Issues raised:

(d)    Did you appeal the decision to the United States Court of Appeals?

☐ Yes                    ☑ No

If "Yes," provide:

(1) Name of court:

(2) Date of filing:

(3) Case number:

(4) Result:

(5) Date of result:

(6) Issues raised:

12.    **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes            ☑ No

If "Yes," provide:

(a) Kind of petition, motion, or application:

(b) Name of the authority, agency, or court:

(c) Date of filing:

(d) Docket number, case number, or opinion number:

(e) Result:

(f) Date of result:

(g) Issues raised:

MALARA, RAYMOND 26697509

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Grounds for Your Challenge in This Petition

13.  State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** The Federal Bureau of Prisons'. application of the First Step Act of 2018 is contrary to established law.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
    See attached Memorandum in Support

(b) Did you present Ground One in all appeals that were available to you?
☑ Yes          ☐ No

**GROUND TWO:** none

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
    n/a

(b) Did you present Ground Two in all appeals that were available to you?
☐ Yes          ☑ No

**GROUND THREE:** none

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
    n/a

(b) Did you present Ground Three in all appeals that were available to you?
☐ Yes          ☑ No

MALARA, RAYMOND  26697509

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:** none

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

n/a

(b) Did you present Ground Four in all appeals that were available to you?

☐ Yes          ☐ No

14.  If there are any grounds that you did not present in all appeals that were available to you, explain why you did not:       none

## Request for Relief

15. State exactly what you want the court to do:  For the Court to order the Bureau of Prisons to properly calculate the FSA Federal Time Credits and transfer me to home confinement or halfway house at this time.

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

JANUARY 6TH 2025

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct. I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: 1/6/25

_Signature of Petitioner_

_Signature of Attorney or other authorized person, if any_

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
(OCALA DIVISION)

RAYMOND MALARA, III,

      Petitioner,

vs.                              Civil Action:_____

COLLETTE S. PETERS, DIRECTOR,
FEDERAL BUREAU OF PRISONS, Et Al,

      Defendant.       /

---

MEMORANDUM IN SUPPORT OF HABEAS REGARDING THE BUREAU OF PRISONS'
EXECUTION OF A SENTENCE PURSUANT TO 28 U.S.C. § 2241

COMES NOW, Raymond Malara, III (hereinafter "Mr. Malara" or the "Defendant") pro se with his Memorancum in Support of Habeas Regarding the Bureau of Prisons' Execution of a Sentence Pursuant to 28 U.S.C. § 2241. Based on the facts, the Court should find cause to grant the relief requested as Mr. Malara has been incarcerated beyond the time that the First Step Act of 2018 ("FSA") allows.

## I: BRIEF PROCEDURAL BACKGROUND

On March 3, 2022, Mr. Malara was sentenced for violations of 21 U.S.C. §§ 841(A)(1), 841(B)(1)(C), & 2 Distributing and Possession With Intent to Distribute Cocaine, Fentanyl, and Marijuana (Ct. 1). He was sentenced to a term of imprisonment for 108 months followed by 36 months of supervised release. The full term expiration date is January 20, 2030. Exh.A at 7-8. The Bureau of Prisons ("BOP") has determined that Mr. Malara is eligible for the benefits from the FSA; however, they have failed to calculate and apply those benefits correctly and thus, this matter before the Court is proper.

-1-

## II:   INTRODUCTION

The Defendant has been serving a sentence of 108 months in a Federal prison for the conviction(s) outlined above.  Thus, with the potential of 486  days of Good-Conduct Time Credits ("GCT") along with Time Credits available through the First Step Act of 2018 ("FSA"), and up to a year  of prerelease custody ("RRC") under the Second Chance Act of 2007 ("SCA") is certainly relevant to how the sentence is being carried out by the Bureau of Prisons ("BOP") or how the BOP calculates various available types of time credits.  See 28 U.S.C. § 3632

The BOP has made a determination that the Defendant is eligible for the full benefits of FSA.  See Exh.A at 1, 3, & 7.

As the Court well knows, the BOP has had over six (6) years to fully implement FSA and still, to this day, struggles with rightfully applying it to those eligible inmates as factually documented herein through BOP's own offered evidence.  See Exhs. A & B.

As a direct result, this is yet another clear example of the BOP's unbridled abuse of authority under FSA.  FSA is unambiguous and it clearly prescribed exactly how inmates can redeem their credits.  Here, however, the BOP refuses to honor the mandated requirements prescribed under FSA, which is essentially a violation of the law unto itself, and for which the BOP should be severly sanctioned for causing unnecessary waste of judicial resources.

## III:   LEGAL BACKGOUND

The BOP's discretionary authority regarding FSA is statutorily limited.   Congress even limited the BOP's "subjective" authority via section 602 of FSA as it relates to the application of SCA.  When an

-2-

agency acts contrary to established Congressional intent, Habeas Corpus relief under 28 U.S.C. § 2241 can be brought by a prisoner when they are in custody in violation of the Constitution or laws of the United States and can show a denial of the Congressional intent established in FSA, for example, by the BOP's own ineptitude. See §2241.

Specifically, 18 U.S.C. § 3624 outlines the provisions under which the BOP applies credits towards their execution of the sentence, including the application of time credits for participation in FSA's recidivism reduction programs. See 18 U.S.C. § 3624. In addition, § 3624 details the eligibility and the application of these time credits, emphasizing that time credits "SHALL" be applied towards supervised release or prerelease custody. See § 3632(d)(4)(C). The statute clearly suports the argument for habeas relief if, as here, the BOP has failed to properly calculate and credit the FTCs.

As stated above, FSA is unambiguous in its language. For example, 18 U.S.C. § 3624(d)(4)(D)(i)-(lxviii) enumerates 68 specific offenses and specific conditions that render an inmate ineligible. In the Federal Register on January 19, 2022, the BOP vested its final rule for implemention of FSA and began "attempting" to actually apply the law (nearly 4 years after its enactment). They specifically stated: "It is outside the Bureau's authority to alter [] FSA." See 28 CFR Part 523 and 541, Fr. Vol. 87, No. 12 at 2713. The BOP determined that the Defendant's offenses are not among those 68 offenses listed and therefore, they consider the Defendant was not only eligible but had a minimum recidivism risk as well. See Exhs. A at 1, 3, & 7.

Furthermore, having established the eligibility comes the BOP's

-3-

responsibility to prescribe to the remedies enumerated in FSA, which includes applying all of the credits available to the execution of the term of imprisonement properly and in a timely manner.

## IV: BOP'S FAILURES TO SUBSCRIBE TO THE LAW

Since the enactment of FSA in late 2018, the BOP has failed at every turn to properly implement or apply FSA regarding their mandated responsibilities relating to carrying out the execution of a prisoner's term of imprisonment.  Whether before a Congressional oversight committee, in the public domain through media outlets, or in district court's ruling across the nation where courts declared the BOP's actions were in clear violation of FSA.[1]  A strong challenge to find even one case where the BOP prevailed would be futile.   This futility establish a pattern for the BOP's mode of operation.

In early 2024, the BOP latest attempt was to create an "auto-calculator" for its case managers, the DSCC located in Grand Prairie, Texas, and for inmates and their legal counsels only to release a deeply flawed "app."  Then in July of 2024, the Director, Ms. Collette S. Peters, testifying before Congress stating the Federal Time Credits

Footnote 1: See Woodley vs. Warden, USP Leavenworth, 2024 WL 2260904, at *4 (D. Kas. May 15, 2024)("The BOP has no discretion to refuse or delay transfer of petitioner to prerelease custody."); Yufenyuy vs. Warden, FCI Berlin, 659 F. Supp. 213, 218 (D. N.H. 2023)(finding 28 C.F.R. 523.42(a), contradicts "the plain language of FSA, and of § 3585(a)); Borker vs. Bowers, FMC Devens, 2024 U.S. Dist. LEXIS 88869, at *7 (D. Mass. May 15, 2024)("The fact that the [BOP] regulation, policy, and practice at issue worked in violation of Borker's rights under federal law."); and Sohrab Sharma vs. Peters, Director of BOP, 2024 U.S. Dist. LEXIS 199823, at *19-20 (M.D. Ala. Nov, 4, 2024)(collecting cases of BOP's action contrary to the intent of FSA).

("FTC") would now be "front-loaded" to project the "maximum" FTC a prisoner can earn if the risk factors remain the same and to remove confusion in calculating FTC Time Credits ensuring eligible inmates timely transfer to prerelease custody occurred in accordance to the stated purposes of FSA. [2]

On October 4, 2024, to further aid the BOP's placement of inmates according to its current directive, the BOP memorized a "New Planning Tool" which cabined a "Conditional Placement" and a "Conditional Release Date" to the inmates "FSA Assessment" worksheet. See Exh.B (AIC Talking Points for FSA Time Credits Worksheet/New Planning Section)("AIC"). The Conditional Placement factors include the inmate's GCT date, the first-year redemption of FTC Time Credits towards supervised release date, and the "best-case scenario" date for which they will be eligible to be transferred to home confinement or halfway house placement. See Exh.B at 1-2; see also Exh.A at 6.

The condition, for which the date is conditional has been stated that: "As long as the inmate participated in Evidence Based Recidivism Reduction Programs" and "Other Productive Activities" as prescribed by FSA (Id.at 2), that Conditional Date becomes the actual date (as is anything conditional) when the conditions are not violated.

In this case, there can be no dispute that those programming needs have been and still are being fulfilled. See Exh.A at 3 (December 12,

Footnote 2:   See https/www.bop.gov/resources/news/pdf/testimony/2023 1107.pdf; see also https://www.justice.gov/2024.07.23/Collette Peters Testamony/pdf; and https://www.NYTimes.com/2024/12/ 2024/us/politics/prisons-first-step-act-html?smid=wa=share (Dec. 20, 2024 GLENN THRUSH).

2024 Progress Report since last review). Therefore, the placement date would no longer be conditional _if_ the BOP has actually calculated the FSA Conditional Placement Date correctly in the first instance. Here, based on the evidence that date should be at this time.

However, even beyond this, on October 4, 2024, BOP staff members held a town-hall to introduce the AIC acknowledging its lack of having correctly implementing both FSA and SCA. See Exh.B at 1. To remedy the situation, they told inmates that they would begin honoring the AIC Directive and provided the BOP'S AIC Directive to inmates including posting it on TRULINCS' electronic bulletin board. Id.

As district courts are all to well familiar with, the BOP typically takes months, if not years (4 in fact), to adhere to changes in law. Here is yet another example, the Directive was posted back on October 4, 2024, and as of December 29, 2024, the FTC calculation amount to only shifting sand, where each new printout offerred by the BOP staff provides different "Conditional Placement Dates." See Exh.D. This case is not the exception to the BOP's mode of operation by no means but just a continuing example of ineptitude. Mr. Malara should be up for transfer to prerelease custody at this time not October, instead lanquishes incarcerated in prison.

### V: DEFENDANT ENTITLED TO RELIEF

Defendants are entitled to habeas relief because 18 U.S.C. § 3624(g)(1) establishes who and when a prisoner is eligible for transfer to prerelease custody: (g)(20) prioritizes those prerelease options of (A) home confinement, if not available then (B) halfway house placement. FSA also dictates that the first 365 days of FTC allow the

-6-

prisoner to begin supervised release sooner by transferring those FTC directly to supervised release. See Exh.A at 6. The remaining FTC go to home confinement or to halfway house placement. Id.

The question becomes when "SHALL" a prisoner's eligibility mandate the BOP to transfer a prisoner to prerelease custody? Under the directive of § 3624(g), when the prisoner has Time Credits in the amount equal to the remainder of the prisoner's "term of imprisonment" and has met certain benchmarks for the assessment risk of recidivism sets the "Conditional Placement Date." See 18 U.S.C. § 3624(g). Thus, when was that placement date in this case?

Mr. Malara was sentenced after the enactment of FSA to a term of imprisonment for 108 months. The full term expiration date is January 20 ,2030. See Exh.A at 7. When FSA was enacted on December 21, 2018, he had not served any time in prison. Thus, FTC would be applicable for the entire 108 months in this case.

Accordingly, from March 17, 2022 until Malra's second FSA assessment on October 16, 2023 (period of 19 months and 17 days), the FTC rate was 10 days per month that resulted in 195 days or 6½ months of "initial" FTC. See Exh.A at 4.

After October 16, 2023, FTC factor was raised to 15 days per month. Id. Thus, from October 16, 2023 until January 20, 2030 or 75 months for the remaining term of imprisonment, the amount of FTC would be 38 months ( 75 months times 15 days divided by 30 days per month).

Mr. Malara has served 33 months as of January 17, 2025, and has 486 days or 16 months of "Good-Conduct Time Credits" (Exh.A at 9),

-7-

plus the "initial" 6½months along with the 38 months of "front-loaded"
FTC represents a total of 93½months - or right at the time for the
BOP's "FSA Conditional Placement Date" contrary to the current BOP's
FSA Assessment worksheet.  See Exh.A at 6.  This does <u>not</u> even take into
any consideration of SCA which is mandated to be considered 17 to 19
months prior to the placement date.  Id. at 3 Comments.  All total, the
93½months and the potential 12 months of SCA equates to 12 months beyond
what the corrupted "auto-calculator" projects in this case.

With this factual analysis drawn from BOP documentation, raises a
new question.  How could the BOP's"FSA Time Credit Assessment" work-
sheet (Exh.A at 4-6) be so different in its calculation of the "FSA
Conditional Placement Date" and the analysis provided above?

The answer to this question is relatively simple.  The BOP's "FSA
Time Credit Assessment" worksheet is based only on "Accrued Program
Days" (i.e., what has occurred in the past), and the October 4, 2024,
AIC's New Planning Section directive is not!  The AIC New Planning
directive states that:

> "The Conditional Placement Date: This date reflects the
> <u>maximum</u> amount of FSA Federal Time Credits ["FTC"] an
> FSA eligible individual '<u>can</u>' earn towards prerelease
> confinement (Residential Reentry Center/Work Release
> Center or home confinement) given their current PATTERN
> risk level."  See Exh.B at 1 (emphasis and underline
> added)

Here, the "FSA Time Credit Assessment" worksheet cabins only 40
days of FTC Towards RRC/HC (Exh.A at 4); whereas based on the directive
the "<u>maximum</u>" amount would be 1,125 days in this case ( 75 months times
15 days per month).

Based on the Director's own sworn testimony to both chambers of
Congress and the October 4, 2024 directive, as demonstrated above,

-8-

Malara's FTC Time Credits was equal to the remainder of his imposed term of imprisonment at this time .

"Although a district court has no jurisdiction over discretionary designation decisions, it does have jurisdiction to decide whether the BOP acted contrary to established federal law, violated the Constitution, or exceeded its statutory authority when it acted pursuant to § 3621." Rodriguez v. Copenhaver, 823 F. 3d 970, 973-74 (9th Cir. 2011). The BOP's Program Statement 5410.01 was amended on March 10, 2023. In the section 10(c) of the Program Statement 5410.01, the BOP states that "[F]or Minimum and Low PATTERN risk inmates, consistent with the methodology desribed in Sections 6 and 7 of this policy, the Bureau will initially estimate an FSA conditional Projected Release Date (PDR) by calculating the 'maximum' number of potential FTC that an inmate may earn during his or her sentence." See PS 5410.01, § 10(c), p.16; see also Exh.B at 1 (AIC Directive)(emphasis and underline added). The BOP has not provide or has not even attempted to provide this calculation to the Defendant in this case and thus has exceeded its authority as § 3632(d)(4)(C), the statutory authority, mandates that defendants "shall" transfer eligible prisoners to prerelease custody when the remainder of their term of imprisonment equals their FTC Time Credits.

This factually based and BOP supporting evidence driven analysis further establishes and confirms the fact of the BOP's continued failure to subscribe to Congressional intent as well as their own Program Statement. This does not take into account the mandates of SCA which directs the BOP, and they have clearly acknowledged that it is to consider a prisoner for "RRC placement in accordance to the 2nd Chance

-9-

Act of 2007 and the 5-Factors criteria in 18 U.S.C. § 3621(d) 'will be' conducted 17-19 months prior to your Conditional Transition To Community Date." See Exh.A at 3: Comments (emphasis and underline added). However, could the BOP ever provide a correct "transition" date if it cannot and will not provide the correct FSA Conditional Placement Date in the first instance?

As of the filing of this Emergency § 2241 petition with the Court, the BOP's current Conditional Transition To Community Date is October 2, 2025, which is well over ten months from now - contrary to the facts, evidence, and analysis presented to the Court. See Woodley v. Warden, USP Leavenworth, 2024 U.S. Dist. LEXIS 87521 (D. Kan. May 15, 2024).

## VI:  DEFENDANT IS FREE TO PROCEED

The Federal Litigation Reform Act of 1996 stipulates that before an inmate can bring a motion under habeas, like this one to the court, they must first exhaust all administrative remedies with the Bureau, except in cases where exhaustion would be futile. See Perez v. Joseph, No. 22-2-55, WL 2181090, at *2 (N.D. Fla. May 4, 2022); McGee v. Warden, FDC Miami, 487 F. App'x 516, 518 (11th Cir. 2012) (exhaustion is not required if: (1) administrative remedies would be futile; (2) the actions of the agency clearly and unambiguously violate statutory or constitutional rights; 'or' (3) the adminstrative proce- dure is clearly shown to be inadequate to prevent irreparable injury." See also Pina v. Mendota, Case No. 1:23-cv-1646, 2024 U.S. Dist. LEXIS 175864, *5 (E.D. Cal. Sept. 27, 2024)(same)(emphasis and underline added).

1:  As the evidence and law clearly shows the FSA Conditional

-10-

Release Tool became operable on September 4, 2024. As the Court can observe from the documentation (Exhs. A at 6 & B), the Defendant had his FSA worksheet printed shortly thereafter by BOP staff. With the "FSA Conditional Placement Date" all ready passed, and with the BOP's current failures to correct the date on its own, it certainly would be completely futile as there is no _time_ left to fully exhaust since the date is passed and irreparable injury has already occurred.

Although this issue was presented to the Case Manager in the form of a COP-OUT (Inmate Request to Staff form), the Case Manager simply passed the blame on the "auto-calculator" and others like the DSCC located in Grand Prairie, Texas and stated there was nothing she could or would do. See Exh.C at 1. An Administrative Remedy process was initiated based on the denial of the COP-OUT to the Case Manager. The Informal Resolution was submitted only to be responded to in a similar fashion. Id. at 2. Thus, exhaustion would be futile to proceed any further as the BOP shows it is not interested to resolving an issue.

_2_:   The Bureau's inactions clearly violated the statues and his constitutional rights of due process based on the plain reading of the provisons of § 3632 and the fact that the Defendant had ample FSA Time Credits to be transferred to prerelease custody.[3]

This is true because of the word "_SHALL_", the BOP is required by law to transfer a prisoner to supervise release or prerelease custody if the prisoner is "eligible" as determined under Subsection 3624(g). Under Section 3624(g), a prisoner _is_ "eligible" if the prisoner has

Footnote 3:   BOP acknowledged that "the calculated dates of FSA Conditional Placement Date were _not_ consistent with limitations in the law" (Exh.B at 1) - and according to the BOP's own documents provided it is still not in compliance either.

-11-

FTC Time Credits in the amount equal to the remainder of the prisoner's term of imprisonment, which has been computed (Exh.A 4-5) and the prisoner has met certain benchmarks for the assessment risk of recidivism. Id. at 4; Minimum & § 3624(g)(1).

The Bureau has <u>no</u> discretion to refuse or <u>delay</u> the transfer of a defendant to prerelease custody. See <u>Woodley</u>, 2024 U.S. Dist. LEXIS 87521 (The BOP has no discretion to delay or refuse to transfer of an eligible prisoner to prerelease custody."). In this case, the BOP's failure to transfer the Defendant clearly violated federal law and thus, satisfies the second element of the exception rule. See also <u>Torres v. Gutierrez</u>, 2024 U.S. Dist. LEXIS 165986 (D. Az. May 7, 2024) (Finding administrative exhaustion rule futile where the petitioner raised facial challenge to the BOP's implementation of the statutes and regulations governing application of an inmate's FSA Time Credits and it appeared "very likely that the outcome of any further appeals to the Regional Director or the Office of General Counsel would have been consistent with the adverse decision.").

<u>3</u>: The Placement Date to prerelease is not imminent, but, has long passed infringing on the Defendant's Due Process rights, thus, creating an extrordinary circumstance warranting application of the waiver exception rule in this case. See <u>Fuller v. Rich</u>, 11 f. 3d 61, 62 (5th Cir. 1994)(citation omitted); <u>Markovich v. United States</u>, 2024 U.S. Dist. LEXIS 167179, at *10 (S.D Fla. Sept. 17, 2024)("administrative exhaustion would be futile because Defendant would be unlawfully incarcerated during the time it takes him to exhaust his administrative remedies."); <u>Ller-Reyes v. Warden, FCI Berlin</u>, 2024 U.S.

-12-

Dist. LEXIS 76892 (D. N.H. Aug. 4, 2024)(finding petitioner had
sufficiently alleged facts to establish futility or irreparable harm
"based on the imminence of his release date" so as to deny the motion
for dismissal); Gonzalez v. Doerer, 2023 U.S. Dist. LEXIS 168694, at
13 (C.D. Cal. Aug. 7, 2023)(citing Fraley v. Bureau of Prisons, 1 F.
3d 924, 925 (9th Cir. 1993)(the petitioner's administrative remedies
request was denied based on the language in an "offical" BOP policy,
further appeals, "would almost certainly have [been] denied" and were
futile.).

Courts have also ruled that in this instance of facts does consti-
tute futility as the time to fully exhaust is far greater than the
time remaining in prison.  Often times the exhaustion requirement is a
scapegoat for the BOP, by and through the Government, as in not dealing
with the issue at hand until a district court rules.  See Perez v.
Joseph, No. 22-2055, WL 2181090, at *2 (N.D. Fla. May 4, 2022); McGee
v. Warden, FDC Miami, 487 F. App'x 516, 518 (11th Cir. 2012).

## VII: RELIEF SOUGHT

Mr. Malara prays that the Court will find that he is eligible and
entitled to habeas relief under the First Step Act and the BOP's Program
Statements.  Since the amount of days due is in fact correct based on
the Director's own testimony before Congress and documents in evidence,
for the Court to issue an Order directing the BOP to properly apply PS
5410.01's "maximum" FTC Conditional Placement Date and to transfer the
Defendant, without delay, to prerelease custody in accordance to §3624
and the Second Chance Act.  It must be noted that the BOP often turn to

-13-

"bedspace" as a way to delay and buy more time.  In that case, if they were to try this method for delaying transfer, that this Court direct the BOP to send him directly to home confinement under the color of law as cited in <u>Woodley</u>.  See also the BOP's Program Statement 7310.04, where the agency recognizes that it can put someone in home confinement [] at any time as a discretionary determination of custody status.  As there is no bedspace issues at home.

<u>VIII: CONCLUSION</u>

Mr. Malara, for the reasons stated above, respectfully prays the Court grants the relief requested or any other relief the Court finds fair and just in this case.

Respectfully submitted on this the __7TH__ day of January, 2025 by and for

Raymond Malara, III pro se
Reg. No. 26697-509
FCI Coleman Camp
P.O. Box 1027
Coleman, FL 33521-1027

MALARA v. PETERS

EXHIBIT A

(BOP'S FSA DOCUMENTS)



| Individualized Needs Plan - Program Review    (Inmate Copy) | SEQUENCE: 02275579 |
|---|---|
| Dept. of Justice / Federal Bureau of Prisons | Team Date: 12-11-2024 |
| Plan is for inmate: MALARA, RAYMOND III  26697-509 | |

| | | | | |
|---|---|---|---|---|
| Facility: | COL COLEMAN LOW FCI | | Proj. Rel. Date: | 09-22-2027 |
| Name: | MALARA, RAYMOND III | | Proj. Rel. Mthd: | FIRST STEP ACT RELEASE |
| Register No.: | 26697-509 | | DNA Status: | COL06668 / 03-17-2022 |
| Age: | 41 | | | |
| Date of Birth: | 05-04-1983 | | | |

### Detainers

| Detaining Agency | Remarks |
|---|---|

NO DETAINER

### Inmate Photo ID Status

Full status incomplete - Expiration: null

### Current Work Assignments

| Facl | Assignment | Description | Start | |
|---|---|---|---|---|
| COL | C BARBER | CAMP BARBER | 02-09-2024 | |
| COL | C CAB ORD | CAMP CAB ORDERLY | 09-12-2023 | |

### Current Education Information

| Facl | Assignment | Description | Start | |
|---|---|---|---|---|
| COL | ESL HAS | ENGLISH PROFICIENT | 03-28-2022 | |
| COL | GED HAS | COMPLETED GED OR HS DIPLOMA | 03-28-2022 | |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| COL | | VT COURSE- CDL, MR. VICENTE | 08-21-2024 | CURRENT |
| COL | | RE-ENTRY | 09-30-2024 | CURRENT |
| COL SCP | C | MOCK JOB FAIR:INTERVIEW FOCUS | 04-30-2024 | 04-30-2024 |
| COL SCP | C | MOCK JOB FAIR:INFORMATN FOCUS | 04-30-2024 | 04-30-2024 |
| COL SCP | C | RE-ENTRY FAITH-BASED THRESHOLD | 01-16-2024 | 02-05-2024 |
| COL SCP | C | ACE CAMP BUSINESS PLAN | 10-23-2023 | 12-11-2023 |
| COL SCP | C | SHU ACE CLASS PERSONAL FINANCE | 07-21-2023 | 07-25-2023 |
| COL SCP | C | CAMP ACE CDL | 04-18-2023 | 06-13-2023 |
| COL SCP | C | ALCOHOLICS ANONYMOUS/RE-ENTRY | 04-18-2023 | 04-18-2023 |
| COL SCP | C | NACROTICS ANONYMOUS/RE-ENTRY | 04-18-2023 | 04-18-2023 |
| COL SCP | C | S-FORKLIFT CERTIFICATION | 03-29-2023 | 04-04-2023 |
| COL SCP | C | RE-ENTRY FAITH-BASED THRESHOLD | 07-07-2022 | 02-15-2023 |
| COL | C | ACE RESIDENTIAL REAL ESTATE | 07-16-2022 | 07-31-2022 |
| COL | C | WALK WITH EASE FITNESS PROGRAM | 06-30-2022 | 09-08-2022 |
| COL | C | INTERMEDIATE SENIORS FITNESS | 06-13-2022 | 08-17-2022 |
| COL | C | ADVANCED CIRCUIT TRAINING | 06-13-2022 | 08-16-2022 |

### Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|

** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS **

### Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 03-23-2022 |
| CARE1-MH | CARE1-MENTAL HEALTH | 04-14-2022 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 03-25-2022 |
| YES F/S | CLEARED FOR FOOD SERVICE | 03-25-2022 |

### Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DAP UNQUAL | RESIDENT DRUG TRMT UNQUALIFIED | 08-23-2023 |
| ED COMP | DRUG EDUCATION COMPLETE | 05-11-2022 |



**Individualized Needs Plan - Program Review**    **(Inmate Copy)**

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: MALARA, RAYMOND III  26697-509

SEQUENCE: 02275579
Team Date: 12-11-2024

## FRP Payment Plan

Most Recent Payment Plan

| FRP Assignment: | **COMPLT** | **FINANC RESP-COMPLETED** | **Start: 05-12-2022** |

Inmate Decision:    **AGREED**    **$100.00**    Frequency: **SINGLE**

Payments past 6 months:    **$0.00**    Obligation Balance: **$0.00**

### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|-----|------|--------|---------|---------|--------|
| 1 | ASSMT | $100.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

** NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

## FRP Deposits

Trust Fund Deposits - Past 6 months:    $ N/A    Payments commensurate ?    N/A

New Payment Plan:    ** No data **

## Current FSA Assignments

| Assignment | Description | Start |
|-----------|-------------|-------|
| FTC ELIG | FTC-ELIGIBLE - REVIEWED | 03-17-2022 |
| N-ANGER Y | NEED - ANGER/HOSTILITY YES | 12-10-2024 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 12-10-2024 |
| N-COGNTV N | NEED - COGNITIONS NO | 12-10-2024 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 03-22-2022 |
| N-EDUC N | NEED - EDUCATION NO | 12-10-2024 |
| N-FIN PV Y | NEED - FINANCE/POVERTY YES | 12-10-2024 |
| N-FM/PAR N | NEED - FAMILY/PARENTING NO | 12-10-2024 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 12-10-2024 |
| N-MEDICL N | NEED - MEDICAL NO | 12-10-2024 |
| N-RLF N | NEED - REC/LEISURE/FITNESS NO | 12-10-2024 |
| N-SUB AB N | NEED - SUBSTANCE ABUSE NO | 12-10-2024 |
| N-TRAUMA Y | NEED - TRAUMA YES | 12-10-2024 |
| N-WORK N | NEED - WORK NO | 12-10-2024 |
| R-LW | LOW RISK RECIDIVISM LEVEL | 12-10-2024 |

## Progress since last review

AIC enrolled in Reentry program and CDL course. Good job! He made progress towards his savings goal.

## Next Program Review Goals

Recommend AIC complete Reentry class and continue CDL program.

## Long Term Goals

Recommend AIC save at least $500 in his pre-release savings account by his release date.

## RRC/HC Placement

Consideration has been given for Five Factor Review (Second Chance Act):
- Facility Resources
- Offense
- Prisoner
- Court Statement
- Sentencing Commission

## Comments

AIC given a copy of FSA recidivism risk and time credit assessment.

## FSA Time Credit Assessment
Register Number:26697-509, Last Name:MALARA

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number....: 26697-509 | Responsible Facility: COL |
| Inmate Name | Assessment Date....: 12-01-2024 |
|   Last............: MALARA | Period Start/Stop...: 03-17-2022 to 12-01-2024 |
|   First...........: RAYMOND | Accrued Pgm Days....: 990 |
|   Middle..........: | Disallowed Pgm Days.: 0 |
|   Suffix..........: III | FTC Towards RRC/HC..: 40 |
| Gender............: MALE | FTC Towards Release.: 365 |
| Start Incarceration: 03-03-2022 | Apply FTC to Release: Yes |

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 03-17-2022 | 10-06-2023 | accrue | 568 |

  Accrued Pgm Days...: 568
  Carry Over Pgm Days: 0
  Time Credit Factor.: 10
  Time Credits.......: 180

--------------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 10-06-2023 | 12-01-2024 | accrue | 422 |

  Accrued Pgm Days...: 422
  Carry Over Pgm Days: 28
  Time Credit Factor.: 15
  Time Credits.......: 225

--- FSA Assessment(s) ---------------------------------------------------------

| # | Start | Stop | Assignment | Asn Start | Factor |
|---|---|---|---|---|---|
| 001 | 03-17-2022 | 04-14-2022 | R-MED | 03-17-2022 18:51 | 10 |
| 002 | 04-14-2022 | 10-11-2022 | R-MED | 03-17-2022 18:51 | 10 |
| 003 | 10-11-2022 | 04-09-2023 | R-LW | 10-03-2022 16:44 | 10 |
| 004 | 04-09-2023 | 10-06-2023 | R-LW | 10-03-2022 16:44 | 10 |
| 005 | 10-06-2023 | 04-03-2024 | R-LW | 10-05-2023 00:04 | 15 |
| 006 | 04-03-2024 | 09-30-2024 | R-LW | 12-27-2023 11:09 | 15 |
| 007 | 09-30-2024 | 03-29-2025 | R-LW | 06-25-2024 16:40 | 15 |

## FSA Time Credit Assessment
Register Number:26697-509, Last Name:MALARA

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

--- Best Case Scenario - Conditional Pre-release Planning & Preparation Only -----------------
All conditional days and conditional dates below are the individual's best case scenario
given the individual's FSA/FTC status and best case Second Chance Act (SCA) days as of
12-01-2024. These dates can change if there are changes to one or more of the following: the
individuals FSA risk, FSA opt-in/opt-out status, or best case SCA days.

SCA DAYS ARE NOT GUARANTEED AND REQUIRE AN INDIVIDUALIZED ASSESSMENT! THEREFORE, IF A DEFAULT
OF 365 DAYS IS REFLECTED, THIS DATE IS SUBJECT TO CHANGE BASED ON THE REQUIRED FIVE-FACTOR
REVIEW UNDER 18 USC SEC. 3621(B). AN INDIVIDUAL WHO HAS PENDING CHARGES/DETAINERS ARE NOT
ELIGIBLE FOR SCA TIME. THE FIVE-FACTOR REVIEW INVOLVES THE FOLLOWING: (1)THE RESOURCES OF THE
FACILITY CONTEMPLATED; (2) THE NATURE AND CIRCUMSTANCES OF THE OFFENSE; (3) THE HISTORY AND
CHARACTERISTICS OF THE PRISONER; (4) ANY STATEMENT BY THE COURT THAT IMPOSED THE SENTENCE:
(a)CONCERNING THE PURPOSES FOR WHICH THE SENTENCE TO IMPRISONMENT WAS DETERMINED TO BE
WARRANTED; OR (b) RECOMMENDING A TYPE OF PENAL OR CORRECTIONAL FACILITY AS APPROPRIATE; AND
(5) ANY PERTINENT POLICY STATEMENT ISSUED BY THE U.S. SENTENCING COMMISSION.
---

Projected Release Date: 09-21-2028
Projected Release Method: GCT REL
FSA Projected Release Date: 09-22-2027
FSA Projected Release Method: FSA REL
FSA Conditional Release Date: 09-22-2027
SCA Conditional Placement Days: 365*
SCA Conditional Placement Date: 09-22-2026*
FSA Conditional Placement Days: 355
FSA Conditional Placement Date: 10-02-2026
Conditional Transition To Community Date: 10-02-2025*
**\*Default SCA conditional placement days. This requires a five-factor review!**

**FSA Recidivism Risk Assessment (PATTERN 01.03.00)**

Register Number:26697-509, Last Name:MALARA

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number: 26697-509 | Risk Level Inmate....: R-LW |
| Inmate Name |   General Level......: R-LW (15) |
|   Last.........: MALARA |   Violent Level......: R-LW (11) |
|   First........: RAYMOND | Security Level Inmate: MINIMUM |
|   Middle.......: | Security Level Facl..: MINIMUM |
|   Suffix.......: III | Responsible Facility.: COL |
| Gender.........: MALE | Start Incarceration..: 03/03/2022 |

**PATTERN Worksheet Details**

Item: Programs Completed, Value: 5

General Score: -9, Violent Score: -3

Risk Item Data

| Category – Assignment – Start | | – Stop |
|---|---|---|
| DRG | ED COMP | 05/11/2022 15:46 | |
| EDC | RESREALEST | 07/16/2022 13:37 | 07/16/2022 13:37 |
| EDC | C CDL | 04/18/2023 09:25 | 04/18/2023 09:25 |
| EDC | SHUFINANCE | 07/21/2023 11:53 | 07/21/2023 11:53 |
| EDC | C BUS PLAN | 10/23/2023 08:30 | 10/23/2023 08:30 |

Item: Work Programs, Value: 1

General Score: -1, Violent Score: -1

Risk Item Data

| Category – Assignment – Start | | – Stop |
|---|---|---|
| EDC | FORKLIFT | 03/29/2023 14:03 | 03/29/2023 14:03 |

```
   COLBN  540*23 *            SENTENCE MONITORING        *     04-12-2022
   PAGE 001         *         COMPUTATION DATA           *     09:50:21
                              AS OF 04-12-2022
```

REGNO..: 26697-509 NAME: MALARA, RAYMOND III


```
 FBI NO...........: 953543RB4           DATE OF BIRTH: 05-04-1983  AGE:  38
 ARS1.............: COL/A-DES
 UNIT.............: A-3                  QUARTERS.....: A10-917L
 DETAINERS........: NO                   NOTIFICATIONS: NO
```

 FSA ELIGIBILITY STATUS IS: INELIGIBLE

 THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

 HOME DETENTION ELIGIBILITY DATE....: 03-21-2028

 THE INMATE IS PROJECTED FOR RELEASE: 09-21-2028 VIA GCT REL


---------------------CURRENT JUDGMENT/WARRANT NO: 010 -----------------------

```
 COURT OF JURISDICTION...........: FLORIDA, MIDDLE DISTRICT
 DOCKET NUMBER...................: 8:21-CR-66-KKM-AAS
 JUDGE...........................: MIZELLE
 DATE SENTENCED/PROBATION IMPOSED: 03-03-2022
 DATE COMMITTED..................: 03-17-2022
 HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
 PROBATION IMPOSED...............: NO
```

```
                  FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
 NON-COMMITTED.: $100.00        $00.00         $00.00       $00.00
```

 RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00

------------------------CURRENT OBLIGATION NO: 010 --------------------------
 OFFENSE CODE....:  380     21:841 SCH I NARCOTIC
 OFF/CHG: 21:841 (A)(1), 21:841(B)(1)(C), 18:2 DISTRIBUTION AND
          POSSESSION WITH INTENT TO DISTRIBUTE COCAINE, FENTANYL, AND
          MARIJUANA (CT1)

```
 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:  108 MONTHS
 TERM OF SUPERVISION............:   36 MONTHS
 DATE OF OFFENSE................: 01-21-2021
```


 G0002      MORE PAGES TO FOLLOW . . .

```
   COLBN  540*23 *              SENTENCE MONITORING              *      04-12-2022
   PAGE 002 OF 002 *            COMPUTATION DATA                 *      09:50:21
                                AS OF 04-12-2022
```

REGNO..: 26697-509 NAME: MALARA, RAYMOND III


------------------------CURRENT COMPUTATION NO: 010 --------------------------

COMPUTATION 010 WAS LAST UPDATED ON 03-15-2022 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 03-15-2022 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

```
DATE COMPUTATION BEGAN..........: 03-03-2022
TOTAL TERM IN EFFECT............:  108 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    9 YEARS
EARLIEST DATE OF OFFENSE........: 01-21-2021

  JAIL CREDIT.....................:  FROM DATE     THRU DATE
                                    01-21-2021    03-02-2022

  TOTAL PRIOR CREDIT TIME.........:  406
TOTAL INOPERATIVE TIME..........:    0
TOTAL GCT EARNED AND PROJECTED..:  486
TOTAL GCT EARNED................:   54
STATUTORY RELEASE DATE PROJECTED: 09-21-2028
ELDERLY OFFENDER TWO THIRDS DATE: 01-21-2027
EXPIRATION FULL TERM DATE.......: 01-20-2030
TIME SERVED.....................:    1 YEARS     2 MONTHS    23 DAYS
PERCENTAGE OF FULL TERM SERVED..:   13.5
PERCENT OF STATUTORY TERM SERVED:   15.9

PROJECTED SATISFACTION DATE.....: 09-21-2028
PROJECTED SATISFACTION METHOD...: GCT REL

REMARKS.......: 03-11-22 COMP CMPLT L/BJE.
```




```
  G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

MALARA v. PETERS

EXHIBIT B

(BOP'S AIC TALKING POINTS)

## AIC TALKING POINTS FOR FSA TIME CREDIT WORKSHEET
## NEW PLANNING SECTION

- The FSA Time Credit Worksheets will include a **Best-Case Scenario – Conditional Pre-Release Planning and Preparation Only** section located at the bottom of your credit worksheet. Keep in mind, this is a **PLANNING TOOL** for employees and adults in custody (AIC) to prepare for release and community placement. It is important to note – these dates are subject to change due to various reasons: behavior, program participation, eligibility, appropriateness, and available community resources.
- Worksheets generated on Sept 5 & 6, 2024, were distributed prematurely. The calculated dates of the FSA Conditional Placement dates were not consistent with the limitations in the law. The FSA Statue states: "has earned time credits under the risk and needs assessment system developed under subsystem D, in an amount that is equal to the remainder of the prisoner's-imposed term of imprisonment. This means time credits cannot be applied until the amount of time credits earned equals the time remaining to serve.
- If you were teamed since the September worksheet was generated, your Unit Team will provide you an updated copy. For everyone else, you will be provided a credit worksheet at regularly scheduled teams.

### Understanding Federal Time Credits

- The Federal Time Credits (FTC) system helps you earn credits based on programs you complete while in custody. These credits can reduce your time before you are placed in community settings like Residential Reentry Centers (RRCs)/Work-Release Centers (WRCs) or home confinement.

### New Dates in the System

Three important dates are now shown in your records to help plan your release:

- **FTC Conditional Placement Date**: This date reflects the maximum amount of FSA Federal Time Credits an FSA eligible individual can earn towards pre-release confinement (Residential Reentry Center/Work Release Center or home confinement) given their current PATTERN risk level. If this date is 'N/A' then you will not earn any FTCs towards pre-release placement and the SCA conditional placement date should be used for planning.
- **Second Chance Act (SCA) Conditional Placement Date**: This date is based on the regular rules under the Second Chance Act if you are not receiving any FTCs toward pre-release placement. **This date may default to 365 days if your Unit Team has not conducted an individualized assessment. SCA is not guaranteed and requires an individualized assessment which must be conducted by Unit Team. Therefore, if a default of 365 days is reflected, this date is subject to change based on the required five-factor review.** Individuals with pending charges and/or detainers, are not eligible for consideration under SCA.

Exh. B

## AIC TALKING POINTS FOR FSA TIME CREDIT WORKSHEET NEW PLANNING SECTION

- **Conditional Transition to Community Date:** This date reflects the earliest date you may transition to the community considering both the FSA Conditional Placement Date and the SCA Conditional Placement Date.

### What the Staff Will Do

- Due to the potential high volume of individuals who will be in close proximity to these Conditional Transition to Community Dates following the initial roll-out of the calculations, Unit Team will be allotted additional time to request community placement during the first 90 days of implementation. This time frame will ensure staff convey a timely, accurate, and appropriate release plan to the United States Probation Office. Following this adjustment period, requests will then be submitted at least 12months, but no later than 60 days from the expected release to the community as noted in current policy.
- After the adjustment period, Unit Team will submit a referral at least 12 months, but no later than 60 days prior to your Conditional Transition to Community Date. The Residential Reentry Management Office will make every effort to place you in the community according to Unit Team's recommendation provided adequate community resources are available.

### Your Responsibility

- It's important to continue participating in programs that help you earn FTCs and not doing anything that will suspend your FTC earning status. Staff will review your status regularly, and your release plans could change based on your behavior and progress. Changes in this date occur due to changes in your status including earning rate, program participation status, admission status and disciplinary segregation (if you have reached the maximum of 365 FTCs towards early release and presuming successful program participation, the FSA Conditional Release date will not change unless you receive a sanction of loss of FTCs due to misconduct).

**Remember, this is a PLANNING TOOL which will be used to help prepare you for placement in the community, these dates are not guaranteed and are subject to change based on behavior, program participation, eligibility, appropriateness, and community resources!!**

Exh. B-2

MALARA v. PETERS

EXHIBIT C

(BOP'S APPEALS FOR RELIEF)

U.S. DEPARTMENT OF JUSTICE                                    **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | MALARA, RAYMOND, III | 26697-509 | F-1/105 | COLEMAN CAMP |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST** I am appealing the response offerred in the BP-08 where I sought the correction of my FSA Conditional Placement Date and the Second Chance Act consideration. Back on December 3, 3024, I received an updated FSA Time Credit Assessment worksheet. In this updated version, I was told by my case manager that the date was clearly wrong; however, she could not help me with it because it was an issue from the Auto-calculator from DSCC located in Grand Prairie, TExas.

Although her statement may be true, does not excute the BOP from correctly calculating the FSA Conditional Placement Date. Therefore, before proceeding to the district court, I am still seeking for the BOP to correct its error in this matter, I should have been released to prerelease custody months ago.

1/3/25
_____
DATE

_____
SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____
DATE

_____
WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                                    CASE NUMBER: _____

                                                             CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
                    LAST NAME, FIRST, MIDDLE INITIAL                    REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____
DATE

_____
RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)

## INFORMAL RESOLUTION FORM

**NOTICE TO INMATE:** Bureau of Prisons Program Statement 1330.17 requires that except as provided in 542.13(b) an inmate shall first present an issue of concern informal staff and staff shall informally attempt to resolve the issue prior to submitting a BP-9. A separate form must be used for each issue.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**INSTRUCTIONS:** Counselors will complete and attach this form to each Request for Administrative Remedy Form (BP-9) submitted, if not informally resolved.

Raymond Malara, III          26697-509          F-1/105
_____
**Inmate Name:**                    **Register No.**          **Qtrs. /Unit**          **Inmate Signature**

1. **Specific complaint** (One 8 ½" x 11" continuation page may be attached): I asked for my FSA to be properly calculated since it is wrong. My response from the Case Manager was simply that it is not done on the "local level." What differce does that make? An email to the department that does should be simple

2. **What efforts have been made by the inmate to resolve the complaint informally? To whom has the inmate spoken?**
Spoke with my case manager to no avail

3. **What action does the inmate wish to be taken to correct the issue?**
I want my FSA Time Credits calculated correctly and have it reflect my release to prerelease custody be right. (See Attachment)

**Correctional Counselor's Comments (including actual steps taken to resolve):**

Unit team do not calculate MC's FSA Time Credits.

_____
**Correctional Counselor**          12-23-24          **Staff Circle One:**
                                   **Date**          **Informally Resolved**    **Not Informally Resolved**

_____
**Unit Manager's Review**
**Unit Manager**          12.00.24
                          **Date**

**Distribution by Correctional Counselor:**

1. If complaint is informally resolved, maintain original on file in the Unit.

2. If complaint is **not** informally resolved, attach original to BP-9 Form and forward to Administrative Remedy Clerk for processing.

|          | Inf. Resolution Form Issued to Inmate | Inf. Resolution Form Returned to Counselor | BP-9 Issued to Inmate | BP-9 Returned to Counselor | BP-9 Delivered to Admin Remedy Clerk |
|----------|---------|---------|---------|---------|---------|
| **Date** | 12-19-24 | 12-20-24 | 12-31-24 | 1-3-24 | |
| **Time** | 11:00 Am | 11:46A | 12:01 pm | 11:05A | |
| **Counselor** | Wade | Wade | Wade | Wade | |

BP-A0148
JUNE 10

INMATE REQUEST TO STAFF  CDFRM

U.S. DEPARTMENT OF

FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) Case Manager | DATE: 12/18/2024 |
|---|---|
| FROM: Raymond Malara, III | REGISTER NO. : 26697-509 |
| WORK ASSIGNMENT: CAB ORD. | UNIT: F-1 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

I received my FSA Time Credit assessment paperwork which provided a break-down of all my relevant dates and how much FSA I have along with the Conditional Transition date To Community, the date I am supposed to be transferred to prerelease custody. While looking at the dates and numbers, I realized something wasn't adding up. First thing is, back in the end of September, 2024, when the new foward looking projection dates came out, I went to case manager Coriano and asked him about my date. He told me March 21, 2025 would be my Conditional Transition to Community Date. Now, on this paperwork my date is October 2, 2025 - alomst 7 months later, and

(See Attachment)

(Do not write below this line)

DISPOSITION:

FSA is not calculated on a local level.

| Signature Staff Member | Date |
|---|---|
| [signature] | 12/18/2024 |

Record Copy - File; Copy - Inmate

PDF

Prescribed by P5511

This form replaces BP-148.070 dated Oct 86 and BP-3148.070 APR 94

SECTION    6

INMATE REQUEST TO STAFF: cont.                    Raymond Malara, III

I noticed my FSA Conditional Placement days were only 355. I started calculating trying to figure out where they come up with the numbers. After calculating all days from every date and possible combination, I went to case manager Coriano, who is also the FSA Specialist/Cordinator here, again and asked him what dates are used to calculate the FSA Conditional Placement days. He told me the period start/stop dates which is the time period it took to earn the year off for supervised release. The last when you received the year off for supervised release, that date for me is September 2024. The other date used in the calculation is the FSA Conditional Release date which is the date after you receive the year off, that date for me is September 22, 2027, Therefore, if you calculate from September 2024 to September 22, 2027 that is 3 years. In converting this into days, I calculated 36 months times 15 days that I earned each month and came up with 540 days which is a difference of 185 cabined in the worksheet. Now if you substract 185 from my Conditional Transition To Community date which is currently October 2, 2025 would take my date down to March 28, 2025. Plus, I'm not sure exactly how many days I would get for the 21 days from September 1, 2024 to September 22, 2027, but you could presume that it would push my date to the original Conditional Transition To Community date to March 21, 2025.

I am requesting for you to please look into this matter.

Thank you for your time and consideration, it is greatly appreciated.

DATED: __12/18/2024__

Raymond Malara, III

-1 of 1-

BP-A0148
JUNE 10

**INMATE REQUEST TO STAFF** CDFRM

*COPY*

**U.S. DEPARTMENT OF**

**FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) Case Manager | DATE: 12/18/2024 |
|---|---|
| FROM: Raymond Malara, III | REGISTER NO. : |
| WORK ASSIGNMENT: CAV ORD. | UNIT: F-1 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

I received my FSA Time Credit assessment paperwork which provided a break-down of all my relevant dates and how much FSA I have along with the Conditional Transition date To Community, the date I am supposed to be transferred to prerelease custody. While looking at the dates and numbers, I realized something wasn't adding up. First thing is, back in the end of September, 2024, when the new foward looking projection dates came out, I went to case manager Coriano and asked him about my date. He told me March 21, 2025 would be my Conditional Transition to Community Date. Now, on this paperwork my date is October 2, 2025 - alomst 7 months later, and

(See Attachment)

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate

PDF

Prescribed by P5511

This form replaces BP-148.070 dated Oct 86 and BP-3148.070 APR 94

SECTION 6

INMATE REQUEST TO STAFF; cont.                    Raymond Malara,III

I noticed my FSA Conditional Placement days were only 355.  I started
calculating trying to figure out where they come up with the numbers.
After calculating all days from every date and possible combination,
I went to case manager Coriano, who is also the FSA Specialist/Cordin-
ator here, again and asked him what dates are used to calculate the
FSA Conditional Placement days.  He told me the period start/stop dates
which is the time period it took to earn the year off for supervised
release.   The last when you received the year off for supervised
release, that date for me is September 2024.   The other date used in
the calculation is the FSA Conditional Release date which is the date
after you receive the year off, that date for me is September 22, 2027,
Therefore, if you calculate from September 2024 to September 22, 2027
that is 3 years.  In converting this into days, I calculated 36 months
times 15 days that I earned each month and came up with 540 days which
is a difference of 185 cabined in the worksheet.  Now if you substract
185 from my Conditional Transition To Community date which is currently
October 2, 2025 would take my date down to March 28, 2025.  Plus, I'm
not sure exactly how many days I would get for the 21 days from September
1, 2024 to September 22, 2027, but you could presume that it would push
my date to the original Conditional Transition To Community date to
March 21, 2025.
I am requesting for you to please look into this matter.
Thank you for your  time and consideration, it is greatly appreciated.

DATED:_____              _____
                                            Raymond Malara, III

RAYMOND MACLEA
REG. NO. 26697-509
FEDERAL CORRECTION COMPLEX
FCI COLEMAN CAMP
P.O. BOX 1027
COLEMAN, FL 33521-1027

CERTIFIED MAIL

9589 0710 5270 0001 2525



SCREENED
By USMS

CLERK OF COURT
U.S. DISTRICT COURT
207 N.W. 2ND ST., STE 337
OCALA, FL.
          34475-6603

